UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 0:19-cr-00292-WMW-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| HASHIM SALAH HAJI, | |
| Defendant. | |

David P. Steinkamp and Justin A. Wesley, United States Attorney's Office, 300 S. 4th Street, Suite 600, Minneapolis, MN 55415

Shannon R. Elkins, Office of the Federal Defender, 300 S. 4th Street, Suite 107, Minneapolis, MN 55415

This matter is before the Court on Hashim Salah Haji's motion to suppress evidence. ECF No. 23. Mr. Haji is charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Indict., ECF No. 9. Law enforcement discovered the firearms that form the basis for the indictment when police stopped a vehicle in which Mr. Haji was a passenger. Mr. Haji argues that the police lacked a sufficient basis to stop the vehicle and, as a result, the search of his person and the car were unconstitutional. The Court held a hearing on Mr. Haji's motion on January 7, 2020, and the parties filed post-hearing memoranda. Based on the evidence in the record and the parties' arguments, the Court recommends that Mr. Haji's motion to suppress be denied.

1

I.   **Factual Background**

Minneapolis Police Officer Justin Young testified at the January 7th hearing regarding the investigation in this case. Tr., ECF No. 30. Officer Young regularly works with confidential informants in his investigations, and he was working with an informant on this case ("the CI"). The CI was providing information to the police to obtain favorable treatment for the CI's own felony charge. Tr. at 6, 15. The CI had provided other information prior to the investigation in this case, which Officer Young had been able to corroborate. However, none of that information had led to any arrests or seizures. *Id.* at 6.

On July 13, 2019, the CI called Officer Young and stated that "they were aware of a person that was in possession of a gun and that that person was prohibited from possessing a gun due to their criminal history." *Id.* at 7. The CI told Officer Young "that they believed the person could not possess the gun or could not have the gun because they did prison time." *Id.* at 20. The CI told Officer Young that the suspect "was headed towards the area of 40th and Bloomington to attempt to sell the gun." *Id.* at 7. Officer Young relayed this information to other law enforcement officers, and they drove to the area to set up surveillance. *Id.*

Following that initial contact with the CI, Officer Young received additional information from the CI through text messages and phone calls. *Id.* at 8–9, 10. Approximately 40 minutes after the officers set up surveillance near the intersection of 40th and Bloomington, the CI advised officers that the suspect would be arriving momentarily. *Id.* at 8. The CI indicated that the suspect would be arriving in a white

2

Nissan Altima with the license plate CEE 307. *Id.* The CI also indicated that another vehicle would be arriving around the same time as the white Altima. *Id.* at 21–22. Shortly after receiving that information, Officer Young saw the other vehicle pull up first, followed by a white Altima with the CEE 307 license plate. *Id.* at 22. Both vehicles drove into the parking lot of a Family Dollar store located at 4016 Bloomington Avenue South. *Id.* at 8.

After the Nissan pulled into the parking lot, Officer Young saw a person get out of the first car, walk over to the Altima, and enter the rear passenger compartment. *Id.* at 9. At that point, the CI advised Officer Young that there was a gun in the white Altima. *Id.* Upon receiving that information, Officer Young instructed his fellow officers to initiate a "felony stop." *Id.* When Officer Young ordered the felony stop of the white Altima, he knew only a "street name" or nickname of the individual suspected of selling a gun he possessed unlawfully. *Id.* at 11–12. However, Officer Young did not know the identity of any of the vehicle's occupants and had not confirmed that any person in the vehicle was in fact prohibited from possessing a firearm. *Id.* at 17–18. Officers recovered three firearms from the white Altima, two of which Mr. Haji is charged with unlawfully possessing. *Id.* at 9–10; Indict., Counts 1–2.

**II.   Discussion**

Mr. Haji argues that Officer Young did not have a reasonable articulable suspicion to justify stopping and detaining him because the stop was based on information from a CI that was neither credible nor reliable and the CI's tips were insufficiently corroborated. Def.'s Mem. at 3–10, ECF No. 33. The government argues that Officer

3

Young had reasonable articulable suspicion to stop the Nissan based on the information provided by the CI and the vehicle was properly frisked and firearms properly seized pursuant to *Michigan v. Long*, 463 U.S. 1032 (1983). Gov't Resp. at 3–7, ECF No. 34. Alternatively, the government argues that the officers had probable cause to search the vehicle based on the automobile exception to the Fourth Amendment's warrant requirement. *Id.* at 8–9. For the reasons that follow, the Court concludes that there was reasonable, articulable suspicion to stop the Nissan for investigation and to conduct a limited search of the passenger compartment for weapons. For this reason, the Court concludes that Mr. Haji's motion to suppress should be denied.[1]

### A.    Applicable Legal Standards

Police officers may stop and briefly question an individual if they have a reasonable articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Officers may also stop a vehicle when they have a reasonable, articulable suspicion of criminal activity. *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). When making a *Terry* stop, officers are allowed to conduct an investigation "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. To determine whether the required degree of suspicion exists, courts look to the totality of the circumstances. *United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir.

---

[1] Because the Court finds there was reasonable suspicion for the stop and initial search of the vehicle that led, as explained below, to the discovery of two of the firearms, the Court need not address the government's alternative argument that the automobile exception justified the initial search. *United States v. Watts*, 7 F.3d 122, 126 n.5 (8th Cir. 1993) ("Because we hold that the officers' searches were lawful under *Terry* and *Long*, we need not consider whether or not the facts known to the officers created probable cause.").

2005). *Terry* also permits an officer to frisk a suspect to protect himself and others nearby if "he has a reasonable, articulable suspicion that the [suspect] may be armed and presently dangerous." 392 U.S. at 30. The reasonable-suspicion analysis turns on whether the facts available to the officers provided a reasonable and particularized suspicion that "criminal activity may be afoot" and that the suspect "may be armed and dangerous." *Terry*, 392 U.S. at 30; *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (describing the critical inquiry for a *Terry* pat-down as "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger"). "It is the [government's] burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *United States v. Royer*, 460 U.S. 491, 500 (1983).

Reasonable suspicion justifying a *Terry* stop and pat-down can be established based on information provided by an informant. An informant's tip "that is less reliable than that required to show probable cause" can nonetheless establish a reasonable suspicion supporting an investigatory stop. *Bell*, 183 F.3d at 749 (quotation marks omitted). However, an anonymous tip, standing alone, that a person has a gun is insufficient to justify an investigative seizure and pat-down pursuant to *Terry*. *Florida v. J.L.*, 529 U.S. 266, 268 (2000) ("The question presented in this case is whether an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person. We hold that it is not."). Courts considering whether reasonable suspicion is established by an informant's tip consider its reliability

5

and any corroboration by the investigating officers. *Adams v. Williams*, 407 U.S. 143, 147 (1972).

Although *Terry* contemplated an investigative detention and pat-down of an individual on the street, it has been applied to vehicles as well. In *Michigan v Long*, the Supreme Court held that when officers temporarily seize a vehicle based on reasonable suspicion of criminal activity, they may conduct a protective sweep of its passenger compartment "limited to those areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1047–49. If there is reasonable, articulable suspicion that a suspect during a traffic stop poses a danger, officers may conduct such a limited search of the vehicle, including looking in closed containers that could be accessed by the vehicle's occupants. *United States v. Morgan*, 729 F.3d 1086, 1089–90 (8th Cir. 2013) (concluding that officers had reasonable basis to conduct protective search of passenger compartment of a vehicle, including looking in a "lockbox" large enough to conceal a weapon based on "objectively reasonable concern for officer safety"); *United States v. Shranklen*, 315 F.3d 959, 961–64 (8th Cir. 2003) (concluding that officers reasonably searched a "closed container" found inside the passenger compartment of a vehicle based on *Long*).

A search conducted pursuant to *Long* must be appropriately limited to "areas in which a weapon may be placed or hidden" that are generally accessible to the suspect. 463 U.S. at 1049. The legality of such a search turns on the question of whether it was limited to an area accessible to a suspect. *Compare Shranklen*, 315 F.3d at 964 (finding it reasonable for officer to look inside a pouch found in the passenger compartment of a vehicle), *and United States v. Arnold*, 388 F.3d 237, 241 (7th Cir. 2004) (finding it was

6

reasonable for an officer to reach into the trunk area of a vehicle that was accessible by lowering an armrest in the backseat), *with Valance v. Wisel*, 110 F.3d 1269, 1277–78 (7th Cir. 1997) (concluding that the search of a suspect's trunk was unreasonable because the suspect "would not have been able to gain immediate control of a weapon located there"), *and United States v. Wall*, 807 F. Supp. 1271, 1276 (E.D. Mich. 1992) (concluding that opening of a gun case in the trunk of a suspect's car "exceed[e]d the bounds of a search pursuant to a *Terry* stop").

### B. Analysis

Mr. Haji argues that the information provided by the informant did not provide officers with the reasonable suspicion needed to stop the vehicle and detain its occupants. He asserts that the informant was unreliable because they did not specifically identify any of the vehicles' occupants by name (let alone the suspect), provided no details to substantiate the prohibited-person status of the suspect, and only gave information that was consistent with permissible conduct. He also emphasizes that the informant's prior work with law enforcement had not resulted in any arrests or seizures, rendering it unreasonable for the officers to rely on their tips. *See* Def.'s Mem. at 4–6, 8–9. He asserts that the firearms recovered from the vehicle must be suppressed because they are the fruit of the unlawful seizure of the vehicle and its occupants.

#### 1. Justification for the Stop

Applying the totality of the circumstances test, the Court concludes that the officers had reasonable, articulable suspicion to stop the white Nissan and temporarily detain its occupants to enable further investigation of whether a prohibited person was in

possession of a firearm. Of the circumstances establishing reasonable suspicion in this case, weighing most heavily in the government's favor are the real-time updates provided by the informant during the events of July 13, 2019. First, when the informant called Officer Young about 40 minutes after the officers first established surveillance near 40th and Bloomington, the informant stated that the Nissan would be arriving momentarily and provided a license plate number. The officers were able to corroborate this information through their own observations and then saw a person walk from the other vehicle, which had arrived contemporaneously as predicted, and get into the Nissan. At that point, Officer Young received the second real-time update from the CI stating that the gun was in the car. This additional detail buttressed the reasonableness of Officer Young's suspicion that the occupants of the car were engaged in criminal activity. It suggests that the CI had observed the illegal conduct first-hand. These facts are uniquely strong indicia of reliability of the CI's tip.

Officer Young received information from an informant that a person who had been in prison and could not possess a firearm would be attempting to sell a firearm on July 13, 2019. Officer Young knew the informant, a fact which makes this case distinguishable from *Florida v. J.L.*, 529 U.S. 266 (2000). In *J.L.*, the Supreme Court held that an anonymous tip that a person was carrying a gun was not sufficient on its own to justify the officer's decision to conduct an investigatory *Terry* stop and frisk of the suspect. 529 U.S. at 268, 274. There, the basis for the officer's suspicion of the defendant was "from a call made from an unknown location by an unknown caller," and the Court explained that "[u]nlike a tip from a known informant whose reputation can be assessed

and can be held responsible if her allegations turn out to be fabricated, … an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 270. Such concerns regarding anonymous tips are not present in this case, rendering Mr. Haji's reliance on *J.L.* misplaced.

Moreover, although the CI had not provided information that led to any arrests or seizures at the time they provided the tip in this case, Officer Young testified that he had been able to corroborate the information previously provided to him by the CI. This places the informant in this case somewhere along the continuum between, at one end of the spectrum, a confidential reliable informant who has provided information that has led to arrests or seizures of contraband, and at the other end, the totally unproven informant, in whom officers have less reason to place their faith. *See United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008) (distinguishing between "reliable informants" and "unproven informants" in the probable cause context). Because Officer Young was able to verify information provided by the informant prior to the events of July 13, 2019 at issue here, the informant's tips carried some indicia of reliability even before the surveillance began.

Other facts further support the reliability of the CI's tip. The CI knew the suspect's nickname and provided the intersection where the transaction would take place in the initial report to Officer Young. The CI knew not only that the suspect could not lawfully possess the gun, but that he was prohibited because he had been "in prison," strongly suggesting the existence of a felony conviction. The CI identified the make and model of the vehicle in which the suspect would be arriving as well as that vehicle's license plate

9

number. In addition, the CI explained that another vehicle would be arriving at the scene around the same time as the white Nissan. The officers also observed conduct consistent with the CI's information regarding a sale of a firearm when they saw an individual get out of one of the vehicles and get into backseat of the Nissan, but the Nissan remained in place. Though the officers did not know the identity of the occupants of these vehicles and so could not verify that any person in either car was a felon prohibited from possessing a firearm, they were able to corroborate several aspects of the information received from the CI through direct observation. Even though this corroboration was largely of innocent details, it contributes to the totality of the circumstances demonstrating reasonable suspicion.

In sum, at the time of the search, Officer Young and his partners had corroborated multiple elements of the CI's tip. The unique sequence of events that day and the officers' confirmation of several details they received from the CI made it reasonable for them to infer that the CI had provided reliable information regarding the prohibited status of the suspect selling the gun and that the suspect had a firearm in the car. Under the totality of the circumstances, there was reasonable articulable suspicion to believe criminal activity was afoot and to justify seizing the vehicle and its occupants for further investigation. *See United States v. McBride*, 801 F.2d 1045, 1047–48 (8th Cir. 1986) (finding reasonable suspicion based on an anonymous caller's tip where there was some basis suggested that the caller had firsthand knowledge and police were able to corroborate the license plate numbers and observed the vehicle near where the informant said it was heading).

## 2. Scope of the Search

Having determined that law enforcement had the required justification for an investigative stop of the Nissan in this case, the Court must determine whether the scope of the resulting initial search was lawful. The Court concludes that the firearms seized in this case, which form the basis for the charges against Mr. Haji, were found during a search that did not exceed the limitations imposed by *Michigan v Long*. Although the government did a poor job of establishing at the hearing where within the car the guns were discovered,[2] the record as a whole supports the Court's conclusion that the scope of the search leading to their discovery did not exceed that permitted by the Constitution.

First, in the broader record the government revealed what it likely intended to introduce into evidence about the location of the firearms within the car. Prior to the hearing, the government filed a response to Mr. Haji's pretrial motions. ECF No. 26.

> Police conducted a felony stop of the car. Mr. Haji was in the front passenger seat. Mr. Haji had a backpack between his legs on the floor. As police were removing Mr. Haji from the car, he said, 'there's something that's falling, there's something that's falling. It's fin to fall.' A gun then fell from Mr. Haji's shorts onto the ground. This gun was a stolen 9mm Springfield XD9. Officers searched the

---

[2] The following exchange between the prosecutor and Officer Young at the evidentiary hearing provides the only information regarding the events after the vehicle was stopped:

> Q. And [after you instructed the officers at the scene to conduct a felony stop] your fellow officers then recovered the Springfield 9 millimeter and the Tec 9 from the vehicle?
>
> A. Yes, as well as a third firearm.

Tr. at 9. From the evidence adduced at the hearing alone, the Court is left to guess whether the firearms Mr. Haji is charged with unlawfully possessing were located together or separately and where, within the car, they were found.

>backpack that was between Mr. Haji's legs and also found a 9 mm "Tec 9" and a 50 round extended magazine.

*Id.* at 1–2. Both the first firearm, seen falling from Mr. Haji's lap, and the second firearm, found in a backpack, were within the passenger compartment within reach of the Nissan's occupants, making the search that led to their discovery permissible under *Long* and its progeny. *Shranklen*, 315 F.3d at 964 (finding it reasonable for officer to look inside a pouch found in the passenger compartment of a vehicle). However, this more detailed description of events in the government's pre-hearing submission does not constitute evidence. *See, e.g.*, *Tang v. I.N.S.*, 223 F.3d 713, 720 (8th Cir. 2000) (holding that a party's reference in her brief to the Board of Immigration Appeals regarding a date of service for an order to show cause "was argument of counsel and not evidence"). To meet its burden to clearly show that the firearms were seized in a manner consistent with *Long*, the government should have introduced evidence at the hearing regarding their location at the time of the search.

Nevertheless, Mr. Haji does not contest that the firearms were obtained by a search that was consistent with *Long*. Mr. Haji did not explore this issue at the hearing, and he does not argue in his post-hearing submission that the search exceeded the scope permitted by *Long*.[3] Instead, the focus of his argument is that officers lacked even

---

[3] The Court notes that counsel for Mr. Haji probably determined that contesting the adequacy of the record on this point would have been a somewhat futile gesture. Although the record at the hearing was inadequately developed by the government, it seems certain that if the government sought to correct that oversight with additional testimony, a request the Court would likely have granted rather than recommend suppression on an incomplete record, the facts would have supported the legality of the search.

reasonable articulable suspicion to stop the car, making the discovery of the guns fruit of that unlawful initial detention. Def.'s Mem. at 9–10. Based on this admittedly imperfect record, the Court concludes that the scope of the search that led to the discovery of the two firearms charged in Mr. Haji's Indictment did not exceed that permitted by the reasonable articulable suspicion explored above.[4]

For these reasons, the Court concludes that the search of the Nissan as well as the seizure of firearms did not violate the Fourth Amendment. Accordingly, Mr. Haji's motion to suppress should be denied.

## Recommendation

Based on the foregoing, the Court makes the following recommendation:

1. Mr. Haji's Pretrial Motion to Suppress Search and Seizure (**ECF No. 23**) be **DENIED**.

Date: March 5, 2020

                                                     *s/Katherine Menendez*
                                                     Katherine Menendez
                                                     United States Magistrate Judge

---

[4] Neither party addresses the location of the third firearm at the time of the search or the discovery of any other evidence. The Court notes that, once the first two firearms were discovered and Mr. Haji was identified as a felon, law enforcement had more than enough probable cause to search the entire vehicle under the automobile exception. *United States v. Farnell*, 701 F.3d 256, 264 (8th Cir. 2012) ("The so-called automobile exception permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime.") (cleaned up).

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.